David A. GROVE, Plaintiff,

v.

DEPARTMENT OF JUSTICE,
et al., Defendants.

Civ. A. No. 89–90 SSH.

United States District Court,
District of Columbia.

Sept. 25, 1992.

Daniel S. Alcorn, Vienna, Va., for plaintiff.

Charles L. Hall, Asst. U.S. Atty., U.S. Atty's Office, Washington, D.C., for defendants.

OPINION.

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, defendants' motion is granted in part and denied in part.

*Background*

Plaintiff is a former police officer for the Philadelphia Police Department. In January of 1990, he was convicted of charges relating to his role in a drug-sale operation conducted by certain members of the 5–squad, the special narcotics unit to which he was assigned.

By letter dated November 16, 1988, plaintiff petitioned the defendant agencies pursuant to the Freedom of Information Act (the FOIA), 5 U.S.C. § 552, and requested that they provide access to or copies of a number of government records.[1] The records plaintiff requested fall into two categories. The first category (encompassing plaintiff's requests 1–4) concerns records pertaining to Bradley F. Bryant, Larry E. Bryant, and Roger Barnard, all of whom were arrested in January 1980 by plaintiff and other 5–squad members. The first category also concerns records regarding Col. James Atwood. The second category (plaintiff's request 5) concerns records pertaining to plaintiff and his five co-defendants in his criminal case.

Claiming that the defendants had failed to respond to his FOIA requests within the required period of time, plaintiff filed this action on January 12, 1989. On September 7, 1989, the Government filed a motion to dismiss, or in the alternative, for summary judgment. In response, on December 14, 1990, the Court issued an Opinion dismissing the complaint as to the DEA and the CIA, and granting summary judgment in favor of the Secret Service. 752 F.Supp. 28. In addition, the Court granted summary judgment, as to request 5 only, in favor of the NSA, the DIA, the Navy, and the FBI. The Court denied summary judgment to the NSA, the DIA, the Navy, and the FBI as to requests 1–4, and to the DOJ as to requests 1–5. Presently before the Court is defendants' second motion to dismiss, entitled Second Supplement to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.[2]

1. The defendants originally petitioned were the Central Intelligence Agency (CIA); the Department of Justice (DOJ); the Defense Intelligence Agency (DIA); the Department of Defense (Defense); the United States Secret Service (Secret Service) and its field office; the Federal Bureau of Investigation (FBI) and its field office; the National Security Agency (NSA); the Drug Enforcement Administration (DEA) and its field office; China Lake Naval Weapons Center (China Lake); and the Department of the Navy (Navy).

2. The DOJ has not joined in this motion to dismiss. In an affidavit attached as an exhibit to this motion, the Executive Office for United States Attorneys (EOUSA) partially summarizes the DOJ's involvement in this case. When plaintiff first made his FOIA request to the DOJ, the EOUSA asserted FOIA Exemption (7)(A) to withhold documents that could have adversely affected plaintiff and his co-defendants in their ongoing criminal case. In the Opinion dated December 14, 1990, the Court ordered the DOJ to make a disclosure determination because plaintiff's criminal trial was no longer pending. The EOUSA then conducted an initial review of the 60–box file containing responsive documents, and informed plaintiff that he must remit an advance payment of $250 for copying fees, which he eventually remitted. The EOUSA then indicated by affidavit of June 6, 1991, that it needed 75 working days to process plaintiff's request. In response, plaintiff stated that he did not object to a reasonable period of time for processing. This processing period has passed

*Discussion*

■ To be entitled to summary judgment, each movant agency must "prove[ ] that no substantial and material facts are in dispute and that [it] is entitled to judgment as a matter of law." *Weisberg v. Department of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). To meet this burden, the agency must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *National Cable Television Ass'n v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973). In determining whether the agency has satisfied this burden, the Court may rely solely on agency affidavits. *See Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978) (*Goland I*), *vacated in part on other grounds,* 607 F.2d at 367 (D.C.Cir.1979) (*Goland II*), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). The affidavits, however, "must be 'relatively detailed' and nonconclusory." *Id.* (quoting *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

1. NSA and DIA

■ The NSA and the DIA, in requesting summary judgment, assert that they have conducted a thorough search of their records but have been unable to find any documents responsive to plaintiff's FOIA requests 1–4.

The NSA has met its burden. In response to plaintiff's requests 1–4, the agency submitted a sworn declaration of its Deputy Director of Policy, who is authorized to disclose unclassified records pursuant to the FOIA. The declaration outlines the Deputy Director's responsibilities, indicates his knowledge of the plaintiff's requests, and describes adequately the document search conducted. With respect to the search, the declaration states that:

Although NSA is not a criminal investigative agency, my office conducted a search of all files in which records re-

sponsive to plaintiff's request could possibly be kept. No records responsive to plaintiff's request could be located. On March 21, 1991, I finally informed plaintiff's attorney that all files in NSA in which there was even a slight possibility that responsive material could be kept had been searched and that no records responsive to plaintiff's requests 1–4 could be found.

Declaration of Frank F. Blanco ¶ 4. In support of a motion to dismiss a FOIA case, an agency does not have to present affidavits that "set forth with meticulous documentation the details of an epic search." *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982). The NSA declaration sufficiently describes the search conducted, and summary judgment as to the NSA is therefore granted.

Similarly, the DIA has met its burden. In response to plaintiff's requests 1–4, the DIA submitted a sworn declaration of its Assistant General Counsel, Lt. Col. Terry E. Bathen, to support its assertion that the agency's search was thorough and complete. The declaration states that Lt. Col. Bathen referred plaintiff's requests 1–4 to the following DIA component offices: the Defense Intelligence College, the Assistant Deputy Director for Human Resources, the Central Reference Division of the Directorate for Technical Services and Support, the Assistant Deputy Director for Security and Counter-intelligence, the Assistant Deputy Director for Attaches and Operations, and the Inspector General. Each of them searched their records for responsive documents, and found no documents concerning Roger Barnard, Bradley F. Bryant, or Larry E. Bryant. In addition, the declaration states that although one file concerning James P. Atwood was retrieved, Lt. Col. Bathen personally reviewed the file and determined that the documents contained therein are not responsive to plaintiff's requests. The declaration also indicates that, after making this determination, he referred certain of these documents to three other federal agencies. Although the affi-

___

and, except for the DOJ's exclusion from this motion, the Court is unaware of the DOJ's present status in this case. Therefore, the Court

orders the DOJ and plaintiff to notify the Court, within 21 days of the date of this Opinion, of the status of this portion of the case.

davit could have been more detailed, it is similar to the affidavits held sufficient in *Perry. See Perry*, 684 F.2d at 127 & n. 20. Therefore, because the declaration is reasonably detailed, and provides an indication of the scope and method of the DIA's search, it provides sufficient information upon which the Court may grant summary judgment. *See Goland I*, 607 F.2d at 352.

This remains true despite plaintiff's misinterpretation of the Assistant General Counsel's actions. The plaintiff argues that because Lt. Col. Bathen referred certain documents to other agencies, he was asking those agencies to make the determination regarding the documents' responsiveness to plaintiff's requests 1–4. However, the declaration states "[a]lthough these records are not responsive to requests 1 through 4, I have referred [them] ... to the originating agencies." Declaration of Terry E. Bathen ¶ 5. The DIA further notes that Lt. Col. Bathen forwarded the documents to the other agencies to permit them to decide whether to release classified or unclassified but non-responsive information originating from their offices.[3] Because the DIA has demonstrated through its detailed declaration that its search was thorough and complete, summary judgment as to the DIA is therefore granted.

2. The Navy

A. *Administrative Documents*

■ The Navy, in requesting summary judgment, first argues that it has searched its administrative personnel files for documents responsive to plaintiff's requests 1–4. In support of this assertion, the Navy submitted a sworn declaration of a secretary with the Naval Investigative Service Command's (NISCOM's) Career Services Department, Bonnie R. Myers, who is familiar with NISCOM's active and inactive civilian personnel records. Ms. Myers's declaration details the manner and location of the files she searched, and states that she found no documents responsive to

plaintiff's requests. Because the Court may rely on sufficiently detailed sworn declarations such as this, *see Goland I*, 607 F.2d at 352, the Court finds that with respect to the administrative personnel files, the Navy is entitled to summary judgment as to plaintiff's requests 1–4.

B. *Criminal Investigative Records*

■ The Navy also argues that because a FOIA exemption applies, it is entitled to summary judgment with respect to the Navy's criminal investigative records search. The Navy asserts that plaintiff is not entitled to access to any such records that might exist concerning the four individuals named in plaintiff's requests 1–4. The Navy claims that any such documents would be protected under Exemption 7(C), which permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Because of this, the Navy refuses to confirm or deny the existence of any such documents.

The Court must review de novo the Navy's decision not to disclose documents requested under the FOIA. *See* 5 U.S.C. § 552(a)(4)(B). The FOIA was intended to provide broad access to official information, and to "open agency action to the light of public scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (citation omitted). Accordingly, the Court must construe the FOIA exemptions narrowly, because "disclosure, not secrecy, is the dominant objective of [the FOIA]." *Id.*

■ To test the applicability of Exemption 7(C), the Court must apply a balancing test, and determine whether the public interest in disclosure outweighs the personal privacy interests of the parties about whom the information is sought. *See United*

---

**3.** Reply to Plaintiff's Opposition to Second Supplement to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, at 2.

*States Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989). In certain types of situations, however, the balance will "characteristically tip[ ] in one direction." *Id.* In those cases, "categorical decisions may be appropriate and individual circumstances disregarded." *Id.* In *Reporters Committee*, the Supreme Court used such a categorical balancing to determine that Exemption 7(C) prevented a group of journalists from obtaining an FBI rap sheet on a private citizen. *See id.* at 778–80, 109 S.Ct. at 1484–85. The Supreme Court justified its categorical decision by noting that:

> The privacy interest in maintaining the practical obscurity of rap-sheet information will always be high. When the subject of such a rap sheet is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of "what the Government is up to," the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir.

*Id.* at 780, 109 S.Ct. at 1485. As a threshold matter, there is no dispute that the requested records concern documents compiled for law enforcement purposes. Specifically, plaintiff seeks information concerning criminal investigations of private citizens.[4] This information is similar to the rap-sheet information sought in *Reporters Committee*. Categorical balancing is thus appropriate with regard to plaintiff's requests 1–4, and the Navy is entitled to summary judgment as to these requests.

In the alternative, the Court finds that the privacy interests of the individuals outweigh the public interests claimed by plaintiff. Under this ad hoc balancing test, the

Court concludes that Exemption 7(C) applies.

### i. Public Interests

Plaintiff makes several arguments that disclosure of criminal investigative documents would advance the public's interest in shedding light on agency action. Plaintiff first suggests, based on information contained in the FBI records disclosed to him, that the individuals were involved in government intelligence operations. Citing the FBI records, plaintiff notes that: (1) prior to their arrest in Philadelphia, the individuals made phone calls from a hotel room to certain defense contract companies and government agencies; (2) after their arrest, the individuals claimed to be working for the CIA on a mission to steal Russian radar from Libya, and that one of the individuals passed a polygraph test on that subject; and (3) the individuals possessed sophisticated government surveillance equipment and weapons.[5] In addition to noting the public's interest in knowing about these activities, the plaintiff argues that disclosure would serve the public's interest by showing how federal agencies "handle situations where those under investigation are suspected [of] being agents of another arm of the Government."[6] Secondly, the plaintiff indicates that even if the individuals were not conducting a government mission at the time of their arrest, the document disclosure would reveal how they made private use of the training they had received when they were members of the United States military. Thirdly, plaintiff seems to suggest, although it is unclear from his filings, that the fact that there were numerous newspaper articles about the individuals after their arrest in late 1980 further supports the public's in-

---

**4.** Plaintiff's requests 1, 3, and 4 concern criminal investigations of specific incidents involving the previously-mentioned individuals. Plaintiff's request 2, in contrast, concerns information relating to any relationship existing between those individuals and any government agency. As discussed in the previous section, the Navy indicated that no administrative records regarding any such relationship could be found. The discussion here involves criminal investigative records, so any criminal investigative record regarding these individuals and com-

piled by a federal agency would be responsive to request 2.

**5.** The disclosed FBI documents indicate that the individuals were arrested for the theft of these government materials.

**6.** Plaintiff's Memorandum of Points and Authorities in Support of Opposition to Second Supplement to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, at 7.

terest in disclosure. Finally, the plaintiff argues that the Court should order the Navy to release any responsive criminal investigative documents because the FBI has already done so with respect to its own criminal files.

### ii. Privacy Interests

The Navy asserts that the privacy interests of the individuals involved are similar to the interests identified in *Reporters Committee.* The Navy notes that the Supreme Court "found a 'strong privacy interest' in the nondisclosure of records of a private citizen's criminal history." [7] Comparing the criminal investigative files sought here with the rap-sheet information withheld in *Reporters Committee,* the Navy argues that the privacy interests of the individuals outweigh the public's interest in disclosure.

In addition, to protect adequately these privacy interests, the Navy states that it can neither confirm nor deny the existence of any responsive criminal files. The Navy indicates that merely affirming that the individuals are mentioned in a NISCOM criminal file could stigmatize or embarrass them, because others might speculate about the reasons for the Navy's interest. The Navy further states that "[i]n essence, confirming any NISCOM investigative interest in these people would constitute an invasion of personal privacy by subjecting them to public ... ridicule, and could result in unnecessary attention, harassment, or criticism." Declaration of Jean S. Conover ¶ 4.

### iii. The Balance

To use the balancing test, the Court must look to the language of Exemption 7(C). Exemption 7(C) applies if the disclosure of the law enforcement information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether such disclosure is warranted, the Court must examine "the nature of the requested document and its relationship to the basic purpose of [the FOIA,] to open agency action to the light of public scrutiny." *Reporters Comm.,* 489 U.S. at 772, 109 S.Ct. at 1481 (citation omitted).

Despite plaintiff's assertions to the contrary, the criminal files sought here would not further the purposes of the FOIA. *Department of the Air Force v. Rose,* discussed in *Reporters Committee,* is directly analogous. *See Rose,* 425 U.S. 352, 96 S.Ct. 1592.[8] In *Rose,* law students petitioned the Air Force Academy for disciplinary proceeding summaries, with cadets' names redacted, in order to investigate "the way the Air Force Academy administered its Honor Code." *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. at 1482 (discussing *Rose*). The Court in *Reporters Committee* commented that that petition involved a proper subject for a FOIA request. *See id.* Despite this, *Rose* required the deletion of other identifying information, in addition to name redaction, to safeguard the cadets' privacy interest in their disciplinary case records. *See id.* at 773–74, 109 S.Ct. at 1479. In *Reporters Committee,* the Court noted that "[i]f instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about the persons to whom those files related, the public interest that supported the decision in *Rose* would have been inapplicable." *Id.* at 774, 109 S.Ct. at 1482.

Plaintiff is attempting to gain access to the same kind of specific personal information that the *Reporters Committee* Court would have forbidden under the *Rose* scenario. Plaintiff's assertion that the infor-

---

7. Second Supplement to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, at 8 n. 4.

8. *Rose* was decided under FOIA Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As the *Reporters Committee* Court noted, the analysis is similar to that performed with respect to Exemption 7(C). *See Reporters Comm.,* 489 U.S. at 755–56, 767–69, 109 S.Ct. at 1472–73, 1478–79. The Court further indicated that Exemption 7(C) is actually more protective of an individual's privacy than Exemption 6, because the operative language in Exemption 7(C) prevents disclosure simply when it "could reasonably be expected to" invade privacy.

mation would reveal how an agency investigates another agency's employees does not save his request. If plaintiff is interested in studying this type of agency conduct, then he, like the plaintiffs in *Rose*, must submit a more generic request. There is no need to inquire about particular alleged employees because their identities are not relevant to such a study.[9] As the Court commented:

> [A]lthough there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed. Thus ... in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen.

*Id.* at 774–75, 109 S.Ct. at 1482 (emphasis in original).

Plaintiff's other arguments in support of his request similarly fail. His assertion that disclosure would reveal how the individuals used their military training for private ends does not show how disclosure would illuminate any action by the Government. Under plaintiff's theory, records concerning the activities of any former government employee could be obtained for the purpose of revealing the person's use of a skill learned while in public service. The FOIA's purposes are not so broadly defined.

Plaintiff's third argument is that the existence of newspaper articles, which reported some of these events when they occurred in 1980, mandates disclosure.[10] This argument is insufficient to warrant disclosure under *Reporters Committee* and *Rose*. In *Rose*, the disciplinary summaries, with the names redacted but other identifying information left intact, had once been publicly displayed on squadron bulletin boards. *See id.* at 769, 109 S.Ct. at 1479 (discussing *Rose*). Nevertheless, the *Rose* Court required the redaction of additional identifying information to protect the cadets' privacy interests in the information. *See id.* Applying the privacy interest identified in *Rose* to the facts in *Reporters Committee*, the Supreme Court stated that "the ordinary citizen surely has a similar interest in the aspects of his or her criminal history that may have been wholly forgotten." *Id.* Although the plaintiff here asks for more information than that contained in a criminal rap sheet, the analysis remains the same. The public's interest in little-publicized events that occurred over eleven years ago cannot outweigh the individuals' privacy interests in any criminal file that may exist concerning them.

Plaintiff's final argument, that the Navy should release any responsive criminal files because the FBI has done so, also fails. The FOIA provides for broad disclosure of agency information, but it contains no provision mandating disclosure by an agency simply because another agency has decided to reveal its responsive documents. Rather, the FOIA sets forth rules of disclosure, then carves out certain exemptions that permit an agency to deny access to specific types of information. Under the

9. The Court in *Carter v. United States Dep't of Commerce* expressed a similar opinion. *See Carter v. United States Dep't of Commerce*, 830 F.2d 388 (D.C.Cir.1987). In deciding that the plaintiff could obtain records of the Patent & Trademark Office's disciplinary proceedings only if the individuals' names and other identifying information was redacted, the Court commented:

> The public does have an interest in the proper functioning of PTO disciplinary investigations, and ... we consider this public interest in disclosure.... Nevertheless, we find that

the interest of targets of disciplinary investigations in having identifying information redacted clearly outweighs such a generalized public interest in fair and efficient government.

*Carter*, 830 F.2d at 390 n. 8.

10. In opposition to defendants' motion for summary judgment, plaintiff submitted approximately eight articles, dated December 7 and 8, 1980, that appeared in *The Bulletin*, a newspaper circulated in the Philadelphia area and southern New Jersey.

terms of 5 U.S.C. § 552(a)(3), for example, an agency must "upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules ... make the records available to any person." 5 U.S.C. § 552(a)(3). The nine categories of exemptions preventing disclosure under this and related FOIA provisions pertain to such matters as national defense secrets, 5 U.S.C. § 552(b)(1), privileged trade information, 5 U.S.C. § 552(b)(4), and certain interor intra-agency memoranda. 5 U.S.C. § 552(b)(5). Nowhere in the FOIA is there a requirement that an agency release records simply because another agency that may possess similar records has done so. Thus, the FBI's release of criminal information has no bearing on whether the Navy should make the same decision.

### 3. The FBI

In requesting summary judgment, the FBI argues that it has produced all non-exempt documents or parts thereof that are responsive to plaintiff's requests 1–4. Plaintiff replies that the FBI (1) has failed to demonstrate how Exemption 5 applies to the documents requested; (2) has asserted an overbroad application of Exemption 7(C); and (3) has not met its burden with respect to certain documents it referred to other federal agencies for consultation. Plaintiff also challenges the adequacy of the FBI's search because the agency has failed either to produce or to discuss the existence of a map that he claims was found in a car used by several of the individuals at the time of their arrest in Philadelphia. Finally, plaintiff states that many of the photocopied documents that the FBI did disclose are illegible, and that the Court should deny summary judgment unless adequate copies are supplied.

### A. *Exemption 5*

The FBI argues that certain documents or parts thereof are protected from disclosure by the FOIA Exemption 5. 5 U.S.C. § 552(b)(5). Exemption 5 states that the FOIA's release requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* The FBI claims this exemption for two reasons: (1) the information is attorney work product; and (2) the information is deliberative material.

### i. Attorney Work Product

The Supreme Court has recognized that an attorney's work product falls within the group of materials protected under Exemption 5. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975). The work-product privilege extends to government as well as private attorneys. *See id.* The purpose of the privilege is not to protect every document or piece of information prepared by an attorney, but to ensure effective legal representation within the adversary system. *See Jordan v. United States Department of Justice*, 591 F.2d 753, 755 (D.C.Cir.1978) (en banc). Because the privilege "focuses on the integrity of the adversary trial process," its application is specifically limited to materials "prepared in anticipation of litigation or for trial." *Id.* In addition, if material is exempt from FOIA disclosure because of the attorney work-product privilege, the exemption does not terminate at the close of the litigation for which the material was prepared. *See FTC v. Grolier Inc.*, 462 U.S. 19, 28, 103 S.Ct. 2209, 2215, 76 L.Ed.2d 387 (1983). Rather, "attorney work product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." *Id.*

The burden is on the agency to prove that an exemption prevents the disclosure of the information sought. *See Sims v. CIA*, 642 F.2d 562, 567–68 (D.C.Cir. 1980), *later app.*, 709 F.2d 95 (D.C.Cir. 1983), *aff'd in part, rev'd in part on other grounds*, 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). To sustain its burden, the agency must demonstrate in its affidavits or indices that the documents were prepared with the possible litigation of a specific case in mind. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 865–66 (D.C.Cir.1980). In addi-

tion, the agency may point to non-exempt portions of the documents that it has released, and show by circumstances that the deleted portions "constitute the bare bones of protected matter." *See EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973).

The FBI has met its burden of proving that the material deleted under Exemption 5 is attorney work product. In its affidavit the FBI sets forth a relatively detailed *Vaughn* index indicating which documents or portions thereof it is withholding and its reasons for doing so. In asserting Exemption 5, the FBI states that it is withholding certain information contained in FBI documents but generated by the Department of Justice attorneys during litigation. The FBI's affidavit further notes that disclosure of this information "would reveal frank communications within and among Government agencies discussing various litigation issues, alternative positions and strategies." Declaration of Regina M. Superneau ¶ 21 (April 9, 1991) [hereinafter Superneau Decl.]. Because the information deleted from the FBI's documents originates from DOJ materials, the FBI does not describe the original DOJ attorney work-product documents in detail. However, the FBI's assertion that the information itself is attorney work product is supported by surrounding circumstances including portions of the documents that the FBI did disclose. For example, several of the released documents indicate that the individuals about whom the plaintiff seeks information were under government investigation for mail and wire fraud, theft of government property, and conspiracy to distribute marijuana. Certain portions of some of these documents were deleted because of Exemption 5. The deletions, in the context of the documents, suggest that the FBI simply redacted the material that comprises the "bare bones" of the protected attorney work product compiled in preparation for the government's case against these individuals.[11]

### ii. Deliberative Material

■ In asserting Exemption 5, the FBI states that the withheld material also involves inter- and intra-agency policy discussions and is therefore protected under the deliberative process privilege. This privilege applies to prevent the disclosure of certain inter- or intra-agency letters and memoranda. *See* 5 U.S.C. § 552(b)(5). The exemption was intended to promote frank and open discussions among Government policymakers and advisors and to protect such deliberations from publicity. *See Ryan v. Department of Justice,* 617 F.2d 781, 789–90 (D.C.Cir.1980). Congress "intended 'to delimit [Exemption 5] as narrowly as consistent with efficient Governmental operation.'" *EPA v. Mink,* 410 U.S. at 89, 93 S.Ct. at 837 (citing S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)). Because of this, the Supreme Court has stated that the privilege does not prevent the disclosure of factual material that may be severed from the document without compromising the protected policy discussions. *See id.* at 89–91, 93 S.Ct. at 837–38. In addition, the privilege only safeguards discussions that take place before the final agency policy decision, not those discussions that implement an existing policy. *See Ryan,* 617 F.2d at 791.

Plaintiff argues that the FBI has not addressed whether the material it has withheld under Exemption 5 concerns discussions that occurred prior to or after the agency's final decision, or whether the factual portion of the material may be severed

11. In addition, in each of the four instances in which the FBI withheld entire documents at least partially because of Exemption 5, the FBI supplied plaintiff with a form containing certain identifying information, such as the type of document and the date it was prepared. The forms indicate that the documents concerned communications with the FBI's Philadelphia office during the time of the government's investigation of the individuals. In addition, two of the forms referenced an FBI Headquarters file number which, according to the FBI affidavit, "pertains to an investigation initiated to determine the possible involvement of Bradley Bryant in anti-racketeering activities." Superneau Decl. ¶ 25. This released information, together with the fact that only four documents were withheld because of Exemption 5, further supports the assertion that the withheld information constitutes the bare bones of protected attorney work-product material.

from the policy-related portions. The FBI's affidavit does not address these concerns, and if the agency had asserted only this privilege under Exemption 5, then its affidavit would not suffice to justify the withholding of this information. However, the FBI's affidavit indicates that both the attorney work-product privilege and the deliberative-process privilege protect all of the information withheld under Exemption 5.[12] As indicated, the FBI has adequately asserted the attorney work-product privilege in withholding this information. Because its arguments concerning the attorney work-product privilege alone are enough to justify the withholding of the material under Exemption 5, the FBI does not have to address whether the withheld information contained factually segregable portions or post-decisional discussions.

### B. *Exemption 7(C)*

■ The FBI argues that Exemption 7(C) protects certain documents or parts thereof from disclosure. *See* 5 U.S.C. § 552(b)(7)(C). In its affidavit the FBI categorizes eight types of information for which it asserts this exemption. Although plaintiff does not dispute that all of this information was compiled for law enforcement purposes, plaintiff argues that the FBI improperly asserted the exemption with respect to several categories of information concerning third parties.[13]

To determine whether the FBI correctly asserts Exemption 7(C) the Court must balance the public interests in disclosure against the privacy interests of the individuals about whom plaintiff seeks information. *See Reporters Comm.*, 489 U.S. at 776, 109 S.Ct. at 1483. The Court must take into account the privacy interests of persons who are public officials or private citizens, either targeted by the Government for investigation or not so targeted. In each instance the Court finds that privacy interest considerations outweigh the public interests claimed by plaintiff, and thus Exemption 7(C) applies to protect the information.

#### i. Public Interests

In arguing for disclosure, plaintiff does not attempt to respond individually to each category of materials that the FBI asserts fall under Exemption 7(C). Rather, plaintiff makes several general assertions why Exemption 7(C) should not apply. For example, he suggests that, given the nature of the four individuals' activities, the public interest in the redacted names of the other third parties is strong, and outweighs their privacy interests. Secondly, he argues that the deletions are unjustifiable in view of the extensive release of documents that has already been made. Thirdly, he asserts that the deleted information would provide "substantive information about the activities of [the four individuals named in his original FOIA request] or their associates."[14]

In addition to these general arguments, plaintiff specifically discusses the deletions

---

**12.** With respect to the material protected under Exemption 5, the FBI states:

This exemption was asserted to withhold information contained in FBI documents that was generated by the Department of Justice attorneys during litigation and deemed to fall within exemption (b)(5)—attorney work product privilege. Moreover, inter and intra-agency discussion of policy and recommendations of various courses of action, reflecting the deliberative process privilege of exemption (b)(5) was also deemed applicable.

Superneau Decl. ¶ 21.

**13.** In particular, plaintiff challenges deletions made under the following categories:

(1) Category (b)(7)(C)–3, consisting of names and/or identities of third parties mentioned in FBI files, and in whom the FBI has no investigatory interest;

(2) Category (b)(7)(C)–4, consisting of information about third parties mentioned in FBI files;
(3) Category (b)(7)(C)–5, consisting of names and/or identities of third parties in whom the FBI and/or DEA had an investigatory interest;
(4) Category (b)(7)(C)–6, consisting of information about third parties of investigative interest to the FBI;
(5) Category (b)(7)(C)–8, consisting of information provided to DOJ regarding subjects of an FBI investigation.
Superneau Decl. ¶¶ 13, 30, 32.

**14.** Plaintiff's Memorandum of Points and Authorities in Support of Opposition to Second Supplement to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, at 10.

made under Category (b)(7)(C)–3. This category was used to justify the redaction of names contained in the telephone log, address books, and personal papers of the arrested individuals.[15] Although it is unclear, plaintiff seems to imply that because some of these individuals are government employees, defense contractors, and lawyers, the public-related character of their occupations militates in favor of disclosure.

### ii. Privacy Interests

The FBI argues that the privacy interests of these third parties are stronger than any public interests in disclosure. The FBI indicates that some of these individuals are unrelated to any FBI investigation, and that they are "not of interest to the plaintiff or the public." Superneau Decl. ¶ 30. According to the FBI, the disclosure that their names are contained in an FBI file could subject them to harassment or criticism. The FBI also asserts that it would be an unwarranted invasion of privacy to release the names and personal information of those third parties in whom the agency has an investigative interest. These persons may be of interest as suspects, witnesses, persons with a criminal history, or as sources of information regarding a suspect. The FBI argues that the disclosure of their names and personal information could "expose them to unnecessary public attention, questioning, harassment, criticism and intrusion into their private lives without any judicial safeguards." Declaration of Regina M. Superneau ¶ 41 (November 24, 1989) (cited in Superneau Decl. ¶¶ 32–33).

### iii. The Balance

In applying the balancing test, the Court must consider whether the disclosure of the names and personal information of these third parties "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Court must also determine whether disclosure would advance the goals of the FOIA. *See Reporters Comm.,* 489 U.S. at 772, 109 S.Ct. at 1481. The Court finds that these third parties' privacy interests outweigh any public interests in disclosure.

As the Court of Appeals has recognized, "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity. Protection of this privacy interest is a primary purpose of Exemption 7(C)." *Stern v. FBI,* 737 F.2d 84, 91–92 (D.C.Cir.1984). The Court finds persuasive the argument that disclosure could subject these persons to such a risk. The revelation that their names are contained in an FBI file regarding a specific criminal investigation might lead to public speculation concerning whether they, too, were suspected of illegal activity. This risk is particularly evident with respect to the third parties telephoned by the individuals before their arrest in Philadelphia. Disclosure of their names clearly could stigmatize and embarrass them, and expose them to unnecessary attention merely because their telephone numbers were dialed.

In contrast to these strong privacy interests, the Court finds that the public interests in disclosure of this information are relatively weak. The purpose of the FOIA, to expose agency action to public scrutiny, *Reporters Comm.,* 489 U.S. at 772, 109 S.Ct. at 1481, would not be served by revealing the names of these third parties. Rather, such disclosure would reveal nothing about the FBI's conduct.

Further, plaintiff's assertion that some of these third parties are involved in government-related activities does not tip the balance in favor of disclosure. Even "[g]overnment officials do not surrender all rights to personal privacy when they accept a public appointment." *Bast v. United States Department of Justice,* 665 F.2d 1251, 1255 (D.C.Cir.1981). The privacy interests of persons acting in an official government capacity may not be quite as great as those of private citizens. *See Lesar v. United States Department of Justice,* 636

---

**15.** The telephone log contains a list of phone numbers called by the individuals before their arrest in Philadelphia in 1980. The disclosed list to which plaintiff refers contains the phone numbers, business title, and addresses of most of the parties called, and leaves only the names omitted.

F.2d 472, 487 (D.C.Cir.1980). However, even those in government "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." *Id.* Therefore, the Court finds that the FBI properly applied Exemption 7(C) in refusing to reveal the names and personal information of these third parties.

## C. Documents Referred to Other Agencies

In its affidavit the FBI indicates that it has referred to other federal agencies certain documents that may be responsive to plaintiff's request. The FBI states that these documents will be discussed in a future supplemental declaration. Plaintiff responds (1) that he has not yet received such declaration; and (2) that the FBI has improperly cited "consultation" as its reason for deleting certain information from the released documents.

The FBI may refer documents to their originating agencies and enlist the agencies' assistance in making a release determination. However, the FBI cannot avoid its own obligation to respond to the FOIA request with respect to these forwarded documents. *See Paisley v. CIA*, 712 F.2d 686, 691 (D.C.Cir.1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C.Cir.1984). The FBI must therefore provide the supplemental declaration and either assert applicable exemptions or release the forwarded documents. Moreover, in each instance in which the FBI has claimed "consultation" as its reason for a deletion, without asserting a valid exemption, the FBI must either release the information or explain to plaintiff which exemption applies.

## D. The Map

Plaintiff argues that the FBI's search was inadequate because it failed to reveal the existence of a map that plaintiff claims was used by the individuals arrested in Philadelphia. He asserts that the FBI took possession of the map, that this item is responsive to his FOIA request, and that it should be released.

The issue is "not whether any further documents might exist but whether [the agency's] search for responsive documents was adequate." *Goland II*, 607 F.2d at 369. In determining the adequacy of an agency's search, the Court may rely on agency affidavits that are " 'relatively detailed' and nonconclusory and ... submitted in good faith." *Goland I*, 607 F.2d at 352 (citations omitted). These affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981) (citation omitted). Moreover, whether an agency's failure to produce an identified document raises a sufficient question as to the agency's good faith depends on the factual context of the case. *See id.* at 772.[16]

In this instance, there is no indication that the FBI acted in bad faith when it responded to plaintiff's FOIA request. The FBI's affidavit, as previously described, contains a relatively detailed *Vaughn* index that explains which exemptions it is asserting and its reasons for doing so. Moreover, the FBI has not refused to supply the plaintiff with the requested information, but instead has released hundreds of responsive documents to him. Therefore, the Court holds that plaintiff has not made a showing of bad faith regarding the FBI's search of its own

**16.** In *Ground Saucer Watch,* the Court of Appeals cited *Founding Church of Scientology, Inc. v. National Security Agency,* 610 F.2d 824 (D.C.Cir.1979), as an instance in which the factual context demonstrated that the agency had responded in bad faith to a FOIA request. *See Ground Saucer Watch,* 692 F.2d at 772. The Court contrasted the facts before it, in which the CIA had released over 900 pages of responsive documents, with those in *Founding Church,* in which the NSA "had produced no documents" in response to the FOIA request. *Id.* The Court deemed the CIA's search in *Ground Saucer Watch* adequate to withstand plaintiff's challenge that the CIA had not produced all identified responsive documents. *See id.*

documents sufficient to undermine the Court's reliance on the FBI's affidavit.

### E. *Illegible Documents*

██ Plaintiff's final assertion is that many of the photocopied documents that the FBI disclosed to him are illegible. Plaintiff is entitled to receive legible copies of documents that are responsive to his request and are not exempt. The Court therefore orders plaintiff to provide the FBI with copies of what he validly considers to be illegible documents. The Court further orders the FBI, within 45 days from receipt of such documents, to provide plaintiff legible copies of the documents. If the FBI does not have legible copies of any or some of these documents, then the FBI shall provide plaintiff with an affidavit stating that no legible copy exists, and for which documents this is the case.

### *Conclusion*

Therefore, for the reasons stated above, this Court denies in part and grants in part defendants' motion for summary judgment. The Court grants summary judgment as to the NSA, the DIA, and the Navy as to plaintiff's remaining requests 1–4. The Court further grants summary judgment to the FBI as to plaintiff's remaining requests 1–4, but only with respect to those documents for which the FBI has made a release determination. The Court denies summary judgment, without prejudice to providing sufficient affidavits, to the FBI with respect to those documents that the FBI has referred to other agencies and for which it has made no release determination. In addition, the Court orders plaintiff and the DOJ, within 21 days of the date of this Opinion, to inform the Court of the status of plaintiff's requests 1–5 to the DOJ. The Court also orders the FBI to provide plaintiff with legible copies of the illegible documents, if ones are available.