William J. CARTER, Appellant,

v.

UNITED STATES DEPARTMENT OF
COMMERCE, et al.

No. 86–5556.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1987.

Decided Oct. 9, 1987.

William J. Carter, for appellant. Brian H. Rhatigan and Kevin M. Murphy, Washington, D.C., were on the brief, for appellant.

John C. Martin, Asst. U.S. Atty., for appellees. Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys. were on the brief, for appellees. Deborah A. Robinson, Asst. U.S. Atty., Washington, D.C., also entered an appearance, for appellees.

Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge.

Appellant, William J. Carter, appeals from a summary judgment of the United States District Court for the District of Columbia that appellee, the United States Department of Commerce (agency) properly refused under Exemption 6 of the Freedom of Information Act (FOIA) to disclose portions of files containing records of dismissed Patent & Trademark Office (PTO) disciplinary investigations. 5 U.S.C. § 552(b)(6). We agree in the main with the District Court that disclosure of the redacted information would create a "clearly unwarranted" invasion of personal privacy; we conclude, as well, that the court did not abuse its discretion by failing to conduct *in camera* inspection of the documents.

I. BACKGROUND

On December 6, 1984, appellant Carter requested by letter all documents concern-

ing disciplinary proceedings undertaken since 1970 by the Patent and Trademark Office, an organizational unit of the Department of Commerce. Appellant pursued his administrative remedies but, dissatisfied with the pace at which the agency was processing his request,[1] he filed suit in the District Court. *Carter v. Dep't of Commerce*, Civ.Action No. 85–0975, mem. op. (D.D.C. July 23, 1986), Joint Appendix (J.A.) at 124. On June 24, 1985, the District Court entered an order requiring the interim release of certain categories of documents and the filing of *Vaughn* indices

for documents withheld.[2] In accordance with that order and in a timely fashion, the agency released some 15,000 pages of materials and four separate *Vaughn* indices. *Carter*, Civ.Action No. 85–0975, mem. op. at 2, J.A. at 125.

The agency withheld, in whole or in part, a number of documents identified in *Vaughn* Index IV[3] on the ground that disclosure would result in a clearly unwarranted invasion of personal privacy.[4] The files at issue involved investigations of attorneys for misconduct charges,[5] which were ultimately dismissed. The District

1. The PTO's initial response was sent on January 4, 1985, several days beyond the ten working-day statutory deadline. 5 U.S.C. § 552(a)(6)(A)(i). Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment at 2, Civ. Action No. 85–0975 (D.D.C. filed Oct. 24, 1985), J.A. at 65. Carter filed an appeal letter on January 31, 1985, because he believed the initial response was incomplete. A reply was due within 20 working days. 5 U.S.C. § 552(a)(6)(A)(ii). By letter dated February 5, 1985, the PTO informed Carter that a final determination would be issued by March 5, 1985. On March 5, 1985, Carter spoke to a PTO representative who informed him that the appeal response was not complete. March 22, 1985 was agreed upon as a final due date. On March 21, the PTO contacted Carter requesting a further extension. On March 25, 1985, Carter filed this lawsuit. Memorandum at 9–10, J.A. at 72–73.

2. *Vaughn* indices refer to descriptions of documents withheld. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973) (requiring detailed justifications itemizing and indexing individual documents in order to support exemption claims), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

3. Paragraph 11 of *Vaughn* Index IV is the primary focus of controversy in this case. Its description of documents withheld under Exemption 6 is adopted by reference throughout the Index. Paragraph 11 explains:

   All information leading to the identification of respondent as the subject of the disciplinary proceeding will be deleted and withheld from a file marked No. 1 Commissioner's file. This information includes respondent's name and address, names of clients and business associates, information regarding patent applications handled by respondent and court cases involving respondent as a party or by name. The file contains charges, 100 p.; response to Motion to dismiss, 13 p. and a 33 p. attachment, Motion to dismiss and request for

extension of time, 12 p.; brief, 88 p.; papers relating to hearing officer, 17 p.

   Exemption 6 applies because the charges were dismissed and disclosure of the identifying information in the file would constitute a clearly unwarranted invasion of personal privacy. This file is the type of file covered by exemption 6 since it contains charges of a personal nature which, if released, would reflect unfavorably upon the character of the person charged.

*Vaughn* Index IV at 5 (dated Sept. 9, 1985), J.A. at 18.

4. *Vaughn* Index IV also described other documents withheld pursuant to Exemption 5 for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The District Court held that both the agency's Exemption 5 and 6 claims were legitimate. Appellant initially appealed on both issues, but this court granted the agency's motion for summary affirmance with respect to the Exemption 5 claims. *Carter v. Dep't of Commerce*, No. 86–5556 (D.C.Cir. Dec. 17, 1986) (order granting summary affirmance in part), J.A. at 134–36. Because we found the case with respect to Exemption 6 less clear, we ordered it to be fully briefed and argued. *Id.*

5. The statute involved reads:

   The Commissioner may, after notice and opportunity for a hearing, suspend or exclude either generally or in any particular case, from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be *incompetent or disreputable, or guilty of gross misconduct,* or who does not comply with the regulations established under section 31 of this title, or who shall, by word, circular, letter or advertising, *with intent to defraud in any manner, deceive, mislead or threaten* any applicant or prospective applicant, or other person having immediate or prospective business before the Office....

35 U.S.C. § 32 (emphasis added).

Court held that such files were entitled to protection under Exemption 6, which allows the agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[6]

From each file the PTO withheld "[a]ll information leading to the identification of ... the subject of the disciplinary proceeding." *Vaughn* Index IV at 5 (dated Sept. 9, 1985), J.A. at 18. The information withheld consists primarily of the names and addresses of the subjects of disciplinary proceedings, the names of their clients and business associates, information regarding patent applications handled by them and court cases involving them as parties or by name. *Id.*[7] The District Court found that the privacy interests identified by the agency clearly outweighed the public interest in disclosure of such information.[8] Carter ar-

gued that at least some of these documents could be released in redacted form, but the District Court credited the agency's assertion that it had already given as much as possible without unduly risking disclosure of the identities of the investigation targets. *Carter,* Civ.Action No. 85–0975, mem. op. at 8, J.A. at 131.

The dispute centers on two questions: (1) whether the agency properly concluded that the information withheld would lead to the identification of the subjects of investigation and (2) whether the District Court could responsibly make a de novo determination to that effect without conducting an *in camera* inspection of the documents themselves.

## II. THE IDENTIFICATION ISSUE

■ Although Carter's basic complaint is that not all the information redacted by the

6. Carter's argument that the files containing records of dismissed disciplinary investigations are not "similar" files within the meaning of Exemption 6 is meritless. According to the Supreme Court:

[W]e do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, "[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual."

*Department of State v. Washington Post,* 456 U.S. 595, 602, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982) (quoting H.R.Rep. No. 1497, 89th Cong., 2d Sess. 11 (1966)). The files involved here contain extensive information about charges of misconduct made against members of the patent bar. The Supreme Court has held specifically that records of disciplinary proceedings are "similar files" within the meaning of the statute. *Department of the Air Force v. Rose,* 425 U.S. 352, 376–77, 96 S.Ct. 1592, 1606–07, 48 L.Ed.2d 11 (1976).

7. Exemption 6 was applied to records described in *Vaughn* Index IV paragraphs 11 (J.A. at 18), *supra* note 3, 12–23 (J.A. at 18–21), 32–36 (J.A. at 22–23), 38–45 (J.A. at 24–26) and 48 (J.A. at 27–28). However, paragraphs 12 and 48 describe different kinds of withholdings. Paragraph 12 indicates that "charges and related papers" were withheld in their entirety for the same reasons set out in paragraph 11. J.A. at 8–12. Paragraph 48 also withholds "all information disclosing charges against respondent and respondent's answer" in a pending case but perplexingly "it discloses the target's identity." J.A. at 27–28.

8. The District Court found that appellant "ha[d] identified no public interest that would be served by disclosure of this information." *Carter v. Dep't of Commerce,* Civ. Action No. 85–0975, mem. op. at 8 (D.D.C. July 23, 1986), J.A. at 131. According to the District Court, the only interest to be balanced against the privacy interests implicated was appellant's "purely personal interest" in defending his client before the PTO. *Id.* at 9. This conclusion, however, is not entirely correct; the public's interest in disclosure is neither lessened nor enhanced by the private purpose for which information is sought. *Columbia Packing Co., Inc. v. Dep't of Agriculture,* 563 F.2d 495, 499–500 (1st Cir.1977). The public does have an interest in the proper functioning of PTO disciplinary investigations, and although appellant may have raised only private interests below, we consider this public interest in disclosure as well. Nonetheless, we find that the interest of targets of disciplinary investigations in having identifying information redacted clearly outweighs such a generalized public interest in fair and efficient government. *See Dep't of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

Appellant's reliance on *Stern v. Small Business Administration,* 516 F.Supp. 145 (D.D.C. 1980), for the proposition that the names of individuals involved in these investigations should be disclosed is misplaced. *Stern* involved a situation quite unlike that in *Rose* or in this case. In *Stern,* there was a strong public interest in the disclosure of wrongdoing by public officials acting in their official capacities. 516 F.Supp. at 151. Here the individuals investigated are private citizens against whom charges have been dismissed.

agency would lead to the identification of the subjects investigated, he concedes the legitimacy of withholding the names and addresses of individuals investigated.[9] At oral argument, he also conceded the legitimacy of withholding abandoned or pending patent applications filed by them.[10] Carter's argument that the agency still retains disclosable information refers to information regarding court cases involving the investigated individuals, to the names of their business associates and clients, and to the possibility of other information in the files not specifically mentioned in the *Vaughn* Index.

Withholding information to prevent speculative harm is indeed contrary to the statute's policy favoring disclosure. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 380 n. 19, 96 S.Ct. 1592, 1608, 48 L.Ed.2d 11 ("The legislative history is clear that Exemption 6 was directed at threats to privacy more palpable than mere possibilities."). Nonetheless, because court cases (and patents actually granted) are already in the public domain, release of certain portions of them, even with names redacted, could easily lead to the revelation of the documents in their entirety, including the identity of the attorneys involved. Therefore, disclosure of this information regarding court cases in response to a request for documents relating to disciplinary proceedings would likely identify these attorneys as easily as would the release of their addresses. And, as Carter concedes, information such as "names, addresses," and other "personal identifying information" is properly withheld because it creates a palpable threat to privacy. *See supra* note 9; *Rose*, 425 U.S. at 380 n. 19, 96 S.Ct. at 1608 n. 19.

Furthermore, unlike the requester in *Arieff v. Dep't of the Navy*, 712 F.2d 1462 (D.C.Cir.1983),[11] Carter has presented no evidence suggesting that the disclosure of the names of clients and business associates would not identify the subjects of the investigations themselves.[12] In the absence of any conflicting evidence, we give some credence to the agency's familiarity with the patent bar in evaluating its determination that client and associate names would lead to identification of investigation targets;[13] therefore, we agree that the names of business associates and clients may be redacted since there is no evidence

---

9. Reply to Defendant's Memorandum of Points and Authorities in Further Support of their Motion for Summary Judgment at 4, Civ.Action No. 85–0975 (D.D.C. filed Dec. 2, 1985), J.A. at 118.

10. Carter conceded that Exemption 3 apparently protected abandoned patent applications. *See* 5 U.S.C. § 552(b)(3) (for matters specifically exempted from disclosure by statute); 35 U.S.C. § 122 ("Applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner. . . ."); *Irons v. Gottschalk*, 548 F.2d 992 (D.C. Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 505, 54 L.Ed.2d 451 (1976) (information pertaining to abandoned or pending patent applications is exempt from disclosure under FOIA).

11. In *Arieff*, we held that the names of prescription medications ordered by the Office of the Attending Physician (OAP) for probable use by members of Congress or their families were disclosable because they would not identify the recipients of the drugs. 712 F.2d at 1467. The requester in *Arieff* presented an expert's affidavit contesting the OAP's conclusions that certain drugs were only used in treating a small number of conditions and, therefore, disclosure of their names would reveal a particular medical problem and, together with other information, the identity of the recipient. *Id.* at 1465. Furthermore, the OAP itself determined that only "certain drugs" might lead to identification. *Id.* at 1466–67.

12. Furthermore, the agency in *Arieff* argued the identification of drugs used would constitute a "missing link" in a chain of other information, including specialized knowledge of medical symptoms, that would be necessary to identify the drug user. 712 F.2d at 1467. Here, the agency asserted that the names of clients and business associates could, by themselves, identify the targets of PTO investigations.

13. At the same time, Carter has failed to express any public interest in the disclosure of the names of clients and business associates. Inasmuch as the public interest alleged may be relevant to the determination of whether there exists a palpable invasion of privacy, *Arieff*, 712 F.2d at 1468 (citing *Rose*, 423 U.S. at 378–79), 96 S.Ct. at 1607, the *de minimis* public interest in these names supports our conclusion. This factor further distinguishes this case from *Arieff* in which there was a strong public interest in disclosure to a reporter of the types and costs of drugs purchased with public funds. 712 F.2d at 1468.

contradicting the PTO's reasonable determination that release of these names would identify patent attorneys who have been under investigation for alleged disciplinary violations.[14]

Appellant Carter contends somewhat vaguely that segregable information not listed in the *Vaughn* indices has been withheld. No evidence in the record, however, indicates that any information not in the *Vaughn* index exists;[15] there is no indication of bad faith by the agency; *ipso facto* no basis for requiring further inquiry had been shown.

### III. *In Camera* INSPECTION

In 1974, Congress amended the FOIA and gave federal district courts specific authority to conduct *in camera* inspections of agency files to ascertain whether they were being properly withheld under the statutory exemptions. The district court must "determine the matter de novo" and "*may* examine the contents of such agency records in camera...." 5 U.S.C. § 552(a)(4)(B) (emphasis added). We have previously concluded, however, that "Congress intended to impose no mandates upon the trial court, but instead leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge." *Center for Auto Safety v. EPA*, 731 F.2d 16, 20 (D.C.Cir.1984). "The ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir.1978); *see also*

*Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

Thus, the statutory duty to make a responsible de novo determination places limits on the District Court's admittedly broad discretion as to *in camera* inspections. *See, e.g., Allen v. CIA*, 636 F.2d 1287 (D.C. Cir.1980). *See also King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987) ("in all FOIA cases, the district courts are to review de novo all exemption claims advanced"). The Conference Report on the authorizing amendment explicitly states that "[w]hile *in camera* examinations need not be automatic, in many situations it [sic] will plainly be necessary and appropriate." S.Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267.

We have said that a district court should conduct *in camera* review of documents withheld under a FOIA exemption in two situations. *See King*, at 217 (summary judgment for agency inappropriate if either situation exists). First, if the affidavits submitted by the parties are conclusory—if the documents and justifications for withholding are not described in sufficient detail to demonstrate that the claimed exemption applies— *in camera* review may be necessary to allow meaningful de novo review. *Allen*, 636 F.2d at 1298; *Hayden*, 608 F.2d at 1387. The agency's claims, in

---

**14.** The agency also replies that business associates and clients of investigated individuals have a privacy interest of their own which would be impinged by disclosure of their names in connection with a PTO disciplinary proceeding. *See, e.g., King v. Dep't of Justice*, 830 F.2d 210, 233 (D.C.Cir.1987) (Exemption 7(C) case with attendant lower burden of proof on agency); *Lesar v. Dep't of Justice*, 636 F.2d 472, 487–88 (D.C.Cir. 1980) (Exemption 7(C)); *Miller v. Bell*, 661 F.2d 623, 628–32 (7th Cir.1981) (Exemption 7(C)), *cert. denied sub nom. Miller v. Webster*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). However, because this rationale appears nowhere in the *Vaughn* indices or affidavits that the agency submitted to the District

Court, but only in its brief before this court, Brief for Appellee at 8–9, and because the names of clients and business associates are appropriately considered "identifying information," we need not address this issue.

**15.** Although 12,853 pages of documents responsive to Carter's inquiries relevant to *Vaughn* Index IV were released, Defendant's Statement of Material Facts As to Which There Is No Genuine Issue at 7, Civ.Action No. 85–0975 (D.D.C. filed Oct. 15, 1986), J.A. at 37, he does not point to any suspicious gaps in these documents which indicate that information other than that described in the index has been removed.

its affidavits or *Vaughn* indices, must not merely recite the statutory standards. *Hayden,* 608 F.2d at 1387 n. 28 (citing *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir.1979); *Goland v. CIA,* 607 F.2d 339, 351 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Weissman v. CIA,* 565 F.2d 692, 697–98 (D.C.Cir.1977)). As we said in *Allen,* "[w]here the agency affidavits merely parrot the language of the statute and are drawn in conclusory terms, the court's responsibility to conduct *de novo* review is frustrated." 636 F.2d at 1298.

Second, if there is evidence of agency bad faith—for example, if information contained in agency affidavits is contradicted by other evidence in the record—then, *in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information. *Id.* ("Where there is evidence of bad faith on the part of the agency.... *[i]n camera* inspection is 'plainly necessary....'"). Nonetheless, the mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions. *Hayden,* 608 F.2d at 1387 (citing *Ray v. Turner,* 587 F.2d at 1195).

This court has also recognized other situations which may support a district court's use of *in camera* inspection in a given case. For example, when the requested documents "are few in number and of short length," *in camera* review may save time and money. *Allen,* 636 F.2d at 1298. On the other hand, when examination of the requested documents would require "herculean labors because of their volume," *id.,* courts may legitimately be reluc-

tant to conduct *in camera* inspection.[16] Another important consideration in guiding a court's discretion involves the nature of the dispute over the withheld documents. When the dispute turns on the actual contents of the documents, *in camera* inspection is likely to be helpful. *Id.* However, *in camera* review is of little help when the dispute centers not on the information contained in the documents but on the parties' differing interpretations as to whether the exemption applies to such information. *Id.* at 1298–99 (discussing other considerations as well).

In this case, the assertions of privilege were not conclusory; the agency adequately described the nature of the information withheld, and the reasons for withholding it as "identifying information." Paragraph 11 of the *Vaughn* Index clearly explains the application of Exemption 6 to this information. Furthermore, there is no evidence of bad faith on the part of the agency. Carter's allegations of untoward delay are unconvincing; on December 6, 1984, Carter mailed his request, the agency responded by January 4, 1985, and less than three months later, Carter filed suit. *See supra* note 1. Less than a year after Carter's initial request, in accordance with a court-ordered production schedule, the agency turned over 12,853 pages of responsive documents. *See supra* note 15. *See also Commonwealth of Pennsylvania Dep't of Public Welfare v. HHS,* 623 F.Supp. 301, 308 (M.D.Pa.1985) (assertions of bad faith, made to justify *in camera* review, less persuasive where the agency has released many documents). In sum, there is no reason—conclusory assertions of privilege or evidence of bad faith—to require any general *in camera* inspection of the documents in this case.[17]

---

**16.** In circumstances where *in camera* inspection is plainly warranted but practically burdensome, selective inspection of random of exemplary documents in often an appropriate compromise.

**17.** In his submissions to the District Court, Carter never actually requested *in camera* review of documents withheld under Exemption 6. His initial motion suggested that *in camera* inspection of documents withheld in *Vaughn* Index I

under Exemption 5 (not at issue in this appeal) should be conducted. Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment at 17, Civ.Action No. 85–0975 (D.D.C. filed Oct. 24, 1985), J.A. at 80. Similarly, in his final submission he suggested generally that *in camera* review should be conducted, Reply to Defendants' Memorandum of Points and Authorities in Further Support of their Motion for Sum-

Appellant also makes a more particularized claim that the rationales for withholding under paragraphs 12 and 48 of the *Vaughn* Index are so infirm as to make *in camera* review necessary. In paragraph 12, the agency uses the paragraph 11 "identifying" rationale to justify withholding a "charge and related papers" in their entirety. *Vaughn* Index IV at 5–6, J.A. at 18–19. Paragraph 48 withholds the charges against the subject and his answers, in a pending proceeding, but perplexingly reveals the name of the person under investigation. *Id.* at 14–15, J.A. at 27–28. While there may well be a plausible justification for such withholdings,[18] the agency has not so far provided an adequate explanation of its decision to withhold these charges and related papers in their entirety when in every other paragraph relying on the "identifying" rationale it merely redacted certain information from the charges. *See King*, at 224 (describing requirements for an adequate *Vaughn* Index). Given this inconsistency, we remand for a more complete explanation of the rationale for the Exemption 6 withholding of entire charges and related documents under paragraphs 12 and 48.[19]

## CONCLUSION

Even Carter does not dispute the indisputable proposition that disclosure of information identifying a particular attorney as the subject of a dismissed disciplinary proceeding under 35 U.S.C. § 32 would violate substantial privacy interests of the attorney. The District Court properly held that such an invasion of privacy would clearly outweigh any generalized public interest[20] in insuring fair and efficient government. *See Stern v. FBI*, 737 F.2d 84, 92 (D.C.Cir. 1984) (Exemption 7(C) case). *See, e.g., Rose*, 425 U.S. at 377, 96 S.Ct. at 1606–07 ("identification of disciplined cadets ... could expose formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as loss of employment or friends"). With the exceptions noted above, the District Court was also correct in approving the agency's withholding of the names of targets, clients, associates, patent applications and the court cases as potential identifiers of the

---

mary Judgment at 4, Civ.Action No. 85–0975 (D.D.C. filed Dec. 2, 1985), J.A. at 118, and then, specifically requested it with regard to documents withheld under Exemption 5. *Id.* at 6, J.A. at 120. He made no such request with regard to Exemption 6. While Carter's general request may pass muster, and while the District Court may have an independent responsibility to make an *in camera* inspection when it is plainly necessary, we are certainly entitled to scrutinize the claims of a party who asks the District Court for *in camera* inspection in such a subdued manner. *See, e.g., Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir.1985).

18. Paragraph 12 withheld only nine pages of charges and related papers and it may be that these nine pages simply contain no information other than "identifying information" of the sort redacted from the 100 page charges in other files described in the *Vaughn* Index. With regard to paragraph 48, there may be an argument of a greater public interest in knowing the identity of the subject of a pending investigation than the target of a dismissed investigation; potential clients may want to avoid an attorney who may soon be suspended from practice. Yet, this public interest may not be sufficiently great to require disclosure of the precise allegations against the individual. Disclosure of the

particular charges against the individual identified and his responses would measurably add to the invasion of his privacy occasioned by the initial disclosure that he is the target of an investigation. The agency, however, is obligated to share its reasoning with us.

19. The District Court may require supplemental affidavits from the agency or inspect the documents *in camera*. *King*, at 225–226 ("Whether the District Court proceeds by ordering supplemental affidavits or by *in camera* inspection of documents or samplings, it must ensure that it has an adequate foundation for review....").

20. The case for disclosing the names of individuals against whom charges were dropped or their clients and associates would be stronger if there were grounds for suspecting a pattern of favoritism or bias in PTO proceedings that could not be demonstrated without such information. Here, however, there has been no allegation of any such misconduct. Any substantial invasion of privacy is "clearly unwarranted" under Exemption 6 if "the public interest balanced against it is sufficiently weaker." *Public Citizen Health Research Group v. Dep't of Labor*, 591 F.2d 808, 809 (D.C.Cir.1978).

attorneys involved. The District Court did not abuse its discretion in failing to inspect the documents *in camera* before making its rulings.

*Affirmed in part and remanded in part.*