**James A. KAY, Jr., Plaintiff,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Defendant.**

**Civil Action No. 96–0660(RMU).**

United States District Court, District of Columbia.

Aug. 21, 1997.

---

26. Pl.'s Ex. R.

**30**

Barry Allen Friedman, Thompson, Hine & Flory, L.L.P., Washington, DC, for James A. Kay, Jr.

Charles Francis Flynn, U.S. Attorney's Office, Washington, DC, for F.C.C.

## MEMORANDUM OPINION AND ORDER

URBINA, District Judge.

**Denying Plaintiff's Motion for *In Camera* Review, Denying Plaintiff's Motion to Strike, Granting Defendant's Motion to Quash, Granting Defendant's Motion for Leave to File Under Seal, and Granting Defendant's Motion for Summary Judgment**

Plaintiff James A. Kay, Jr., brings this action against defendant Federal Communi-

cations Commission ("FCC") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1996), for disclosure of withheld records pertaining to the FCC's investigation of his activities. The present matter comes before the court on the following motions: (1) plaintiff's motion for *in camera* review; (2) plaintiff's motion to strike the third Wypijewski declaration; (3) the FCC's motion to quash subpoenas; (4) the FCC's motion for leave to file second declaration under seal; and (5) the FCC's motion for summary judgment.

The above motions raise three issues for the court to resolve. First, the court must determine whether an *in camera* inspection of the withheld documents is warranted. Second, the court must decide whether the FCC's *Vaughn* Indices are sufficiently adequate for the court to conduct a *de novo* review of the FCC's initial decision to withhold certain documents. Finally, the court must determine whether the FCC properly invoked FOIA Exemption 7(A) to withhold the remaining documents plaintiff seeks.

Upon consideration of the parties' submissions, the applicable law, and the record herein, the court concludes that an *in camera* review of the withheld documents is not warranted. The court further concludes that the *Vaughn* Indices in conjunction with the two declarations submitted by the FCC are adequate for the court to conduct a *de novo* review. Finally, the court concludes that the FCC properly withheld the documents pursuant to Exemption 7(A).[1] As a result, the court grants defendant's motion for summary judgment, grants defendant's motion to quash subpoenas, denies plaintiff's motion for an *in camera* review and denies defendant's motion to strike.

## I. BACKGROUND

Plaintiff is currently under investigation by the FCC to determine whether his radio

---

1. The FCC also withheld the same documents pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(F). *See* Defendant's Motion for Summary Judgment ("Def. Mot. for Summ. J.") at 4–5. However, since the court concludes that the FCC properly invoked Exemption 7(A) for all the records withheld, the

licenses should be revoked.[2] By letter dated February 4, 1995, plaintiff submitted a request to the FCC pursuant to the FOIA for documents at the FCC's Los Angeles office in connection with the investigation.[3] Plaintiff's request sought interviews, statements, declarations and/or depositions of numerous individuals concerning plaintiff's radio operations.[4] By letter dated February 14, 1995, plaintiff submitted a second FOIA request for documents relating to an Official Notice of Violation issued by the FCC to the plaintiff.[5] By letter dated February 18, 1995, plaintiff submitted a third FOIA request for documents pertaining to the FCC's inspection of several stations operated by the plaintiff.[6]

Upon receipt of these three requests, the FCC conducted a record search and located a total of 521 pages responsive to plaintiff's requests.[7] By letter dated November 6, 1995, the FCC released 507 pages to plaintiff.[8] The remaining 14 pages were withheld pursuant to FOIA Exemption (b)(7)(A), to protect ongoing enforcement proceedings concerning plaintiff.[9] In particular, the FCC withheld two functional categories of documents to protect the pending investigation.[10]

The first category contains three pages consisting of confidential complainant/informant exhibits to be used as part of the Show Cause/HDO proceeding. The second category contains eleven pages consisting of attorney work product notes.[11]

By letter dated November 20, 1995, plaintiff submitted a fourth FOIA request for documents pertaining directly to the pending Show Cause/HDO proceeding.[12] Plaintiff's fourth request sought several categories of documents that served as the basis for the FCC's allegations in the Show Cause/HDO.[13] Upon the FCC's requests, plaintiff made advance payments on two occasions, December 12, 1995 and February 20, 1996, to process plaintiff's requests.[14] By letter dated February 7, 1996, the FCC released 650 pages to the plaintiff.[15] In that same letter, the FCC informed plaintiff that certain materials were being withheld pursuant to Exemption (b)(7)(A).[16] On February 20, 1996, the FCC released an additional 174 pages responsive to plaintiff's request.

By letter dated February 27, 1996, plaintiff sought a review of the FCC's initial Febru-

---

court need not determine the applicability of the other invoked exemptions.

2. The FCC has been conducting an investigation to determine (1) whether plaintiff has violated the FCC's rules regarding the number of frequencies to which he is entitled; (2) whether plaintiff has made misrepresentations in applications and correspondence to the FCC; and (3) whether plaintiff's licenses should be revoked. *See* Declaration of Anne Marie Wypijewski ("Wypijewski Decl.") ¶ 28. As a result, in December 1994, the FCC issued an *Order to Show Cause, Hearing Designation Order and Notice of Opportunity for Hearing for Forfeiture* ("Show Cause/HDO") requesting plaintiff to demonstrate why the FCC should not revoke all of plaintiff's licenses, not deny his pending licenses, and/or not impose a civil fine. *Id.* at 29. On May 31, 1996, the Administrative Law Judge ("ALJ") ordered that plaintiff's licenses be revoked and imposed a fine. *Id.* at 36. On July 1, 1996, plaintiff appealed the ALJ's decision to the FCC. Defendant's Opposition to Motion to Strike, n. 1. Accordingly, on February 20, 1997, the FCC overturned the ALJ's decision and remanded the case to the ALJ for a full evidentiary hearing. To date, the ALJ has not issued a final decision.

3. Declaration of Lawrence C. Clance ("Clance Decl.") ¶ I and Def. Mot. for Summ. J. at 1.

4. Plaintiff's Exhibit ("Pl. Exh.") 1.

5. Clance Decl. ¶ 2; Def. Mot. for Summ. J. at 2.

6. *Id.*

7. Clance Decl. ¶ 2.

8. Clance Decl. ¶ 4 and Defendant's Exhibit ("Def. Exh.") B.

9. Def. Exh. B.

10. Clance Decl. ¶ 9 and Def. Exh. B.

11. *Id.*

12. Wypijewski Decl. ¶ 2 and Def. Exh. A.

13. Wypijewski Decl. ¶ 3 and Def. Exh. A.

14. Wypijewski Decl. ¶¶ 5–6, 9–10, & 15 and Def. Exh. B–C, E & G.

15. Wypijewski Decl. ¶ 11 and Def. Exh. F.

16. Wypijewski Decl. ¶¶ 12–13.

ary 7 decision to withhold documents.[17] In that letter, plaintiff specifically requested that a *Vaughn* Index be provided, challenged the production fees assessed, and sought identifying information of the individual who conducted the search.[18] On March 25,1996, the FCC denied plaintiff's application for review.[19] The FCC determined that plaintiff was not entitled to a *Vaughn* Index either at the administrative level or when Exemption 7(A) is invoked.[20] The FCC further determined that plaintiff failed to provide any basis for his fees claim.[21]

On March 15, 1996, the FCC invoked exemption (b)(7)(A) and withheld the remaining documents responsive to plaintiff's fourth FOIA request.[22] Specifically, the FCC withheld witness statements, exhibits, and other materials compiled as part of the hearing designated by the Show Cause/HDO for fear that release of such documents would interfere with the FCC's enforcement proceedings against plaintiff.[23] Ultimately, of the 2,736 pages responsive to plaintiff's four requests, the FCC released 2,278 pages and withheld 458 pages.[24] Moreover, the FCC attests that all reasonably segregable information has been released.[25]

Plaintiff filed the instant action on April 4, 1996 requesting that the court: (1) order the FCC to make the requested records available to plaintiff, (2) expedite proceedings in this action to prevent plaintiff from incurring irreparable harm; (3) enjoin the FCC from improperly withholding the information requested by plaintiff; (4) order the FCC to refund all monies paid by plaintiff to the FCC for processing all FOIA requests subsequent to the issuance of the Show Cause/HDO; (5) award plaintiff his costs and attorneys' fees in this action; and (6) grant such

other and further relief as the court may deem just and proper.[26]

## II. DISCUSSION

### A. Legal Standard for Summary Judgment in FOIA Cases

■ In determining whether summary judgment is appropriate, the court must conduct a *de novo* review of the record. 5 U.S.C. § 552(a)(4)(B). Summary judgment is appropriate where "there are no genuine issues as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In FOIA cases, summary judgment may be granted solely on the basis of agency affidavits provided that they are clear, specific and reasonably detailed, and there is no contradictory evidence on the record or evidence of agency bad faith. *See Hayden v. Nat'l Sec. Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). In addition, the burden rests on the agency to justify non-disclosure of any document or portion thereof *See DOJ v. Reporters Committee,* 489 U.S. 749, 755, 109 S.Ct. 1468, 1472–1473, 103 L.Ed.2d 774 (1989); *see also Voinche v. FBI,* 940 F.Supp. 323, 327 (D.D.C.1996) (citing *Nat'l Cable Television Ass'n, Inc. v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973)). In this case, the court concludes that the FCC's *Vaughn* Indices and declarations are sufficiently adequate for the court to conduct a *de novo* review, and that the FCC met its burden of justifying nondisclosure. Accordingly, the court grants the FCC's motion for summary judgment.

---

**17.** Wypijewski Decl. ¶ 20 and Def. Exh. I.

**18.** *Id.*

**19.** Wypijewski Decl. ¶ 21 and Def. Exh. J.

**20.** *Id.*

**21.** Wypijewski Decl. ¶ 22.

**22.** Wypijewski Decl. ¶ 16 and Def. Exh. H.

**23.** *Id.*

**24.** Clance Dec. ¶¶ 8–9 and Def. Exh. B.; Wypijewski Decl. ¶ 33. More precisely, of the plaintiff's first three requests, the FCC released 521 pages and withheld 14 pages. As to the fourth request, the FCC released 1,757 pages and withheld 444 pages.

**25.** Clance Decl. ¶ 10; Wypijewski Decl. ¶ 35.

**26.** Complaint at 4–5.

## B. *In Camera* Review

Plaintiff requests an *in camera* review of the withheld documents claiming that the FCC acted in bad faith by not releasing documents responsive to his four FOIA requests. Plaintiff argues that he obtained several documents, in another litigation, which were allegedly responsive to his FOIA requests but were not released to him by the FCC as required under the FOIA.

The FOIA explicitly authorizes trial courts to conduct *in camera* review of agency materials to determine the applicability of the invoked exemptions, thereby allowing trial courts to make case specific determinations. *See Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C.Cir.1996). The court has "broad discretion" to conduct an *in camera* review, if after examining agency affidavits, the court finds them to be insufficient. *See Lam Lek Chong v. DEA*, 929 F.2d 729, 735 (D.C.Cir. 1991) (quoting *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C.Cir.1987)); *see also Quinon v. FBI*, 86 F.3d at 1227. In some cases, it "will plainly be necessary and appropriate" to conduct an *in camera* inspection in order to make a thorough *de novo* review. *See Quinon*, 86 F.3d at 1227 (citing H.R.Rep. No. 93–1380, 93d Cong., 2d Sess. 8, U.S.C.C.A.N. 1974). Ultimately, the key criterion is "'[w]hether the district judge believes that *in camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemption.'" *Carter*, 830 F.2d at 392, (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir.1978)); *Hayden v. NSA*, 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

In *Allen v. CIA*, the D.C. Circuit set out several criteria for determining the need for *in camera* review in FOIA cases. 636 F.2d 1287, 1293 (D.C.Cir.1980). These criteria do not limit the broad discretion of the trial courts but merely offer some factors trial courts should consider before exercising that discretion. *Id.* at 1297. These criteria include: (1)judicial economy; (2) the conclusory nature of the agency affidavits; (3) possible bad faith on the part of the agency; (4) agency proposal of *in camera* review; (5) disputes concerning the contents of the document; and (6) strong public interest in disclosure. *Id.* at 1297–1299.

In this case, without providing the court with any concrete evidence, plaintiff alleges that the FCC withheld the documents in bad faith. Agency affidavits, however, generally enjoy a presumption of good faith. *See Carter*, 830 F.2d at 393. As a result, a mere allegation of agency bad faith, without more tangible evidence supporting that allegation, will not suffice to undermine the sufficiency of agency submissions. *Id.; see Safe-Card Services, Inc. v. SEC*, 926 F.2d 1197, 1200–1201 (D.C.Cir.1991); *see also Ground Saucer Watch Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981). In FOIA cases, a requester may support an allegation of bad faith by presenting evidence that additional, releasable documents exist. *See Ground Saucer Watch*, 692 F.2d at 771. Speculative assertions that more documents exist will not cast doubt on the agency's affidavits and assertions. *See SafeCard Services, Inc.*, 926 F.2d at 1201 *see also Ground Saucer Watch*, 692 F.2d at 771; *see also Grove v. DOJ*, 802 F.Supp. 506, 518 (D.D.C.1992); *see also Albuquerque Publishing Co. v. DOJ*, 726 F.Supp. 851, 859 (D.D.C.1989). Furthermore, assertions of bad faith must fail where the plaintiff has acquired documents through other means, such as formal discovery, because these procedures may differ from FOIA disclosure procedures. *See Campbell v. DOJ*, 1996 WL 554511, *1 (D.C.Cir.1996). Finally, if the agency does not possess the documents at the time of the FOIA request, even though the documents may have existed at some earlier point in time, the agency is not improperly withholding them. *See Safe-Card Services, Inc.*, 926 F.2d at 1201.

In the present case, as evidence of bad faith, plaintiff asserts that he acquired five letters and a 1993 FOIA request submitted by Harold Pick ("Pick Request"), which the FCC withheld under various exemptions, through formal discovery in connection with a pending lawsuit in California.[27] Based on this assertion, plaintiff argues that the FCC

---

27. Plaintiff's Motion for *In Camera* Review at 4–5.

unfairly denied him access to documents he needs to prepare for the pending Show Cause/HDO proceeding before the FCC and other litigation not involving the FCC.[28]

In response, the FCC submitted a third declaration of Anne Marie Wypijewski ("Third Wypijewski Declaration") which provides detailed reasons for withholding the specific documents which plaintiff offers as "evidence" of the FCC's bad faith.[29] Specifically, the Third Wypijewski Declaration explains that the five letters, addressed to a former FCC employee, were forwarded to that employee in July 1995.[30] The Third Wypijewski Declaration states that, therefore, these letters were not in the FCC's files when it conducted a file search in response to plaintiff's fourth FOIA request.[31] As for the Pick Request, the FCC attests that it could not be located in any search because the request was defective.[32] Accordingly, the Third Wypijewski Declaration attests, the "request" was never received by the FCC.[33] Additionally, the Third Wypijewski Declaration states that, assuming this was indeed a FOIA request, it would not have been released because the FCC would have destroyed this request within two years pursuant to FCC procedures.[34]

Plaintiff fails to overcome the presumption of good faith afforded to the FCC's submissions in this case. Plaintiff's so-called "evidence" of FCC's bad faith is too speculative and conclusory. Plaintiff fails to offer a concrete basis upon which the court may conclude that the FCC has improperly withheld documents. The mere fact that plaintiff has acquired the documents through formal discovery in an unrelated litigation does not imply that the FCC improperly withheld documents from plaintiff in violation of the FOIA. The release of documents through formal discovery procedures pursuant to the Federal Rules of Civil Procedure differs substantially from the FOIA procedures governing the disclosure of documents. Moreover, the Third Wypijewski Declaration has established that the documents at issue did not exist at the time the FCC conducted a search to respond to plaintiff's FOIA requests. Accordingly, the court concludes that the FCC did not act in bad faith in withholding any documents, thus plaintiff's request for *in camera* review must be denied.[35]

28. *Id.*

29. *See generally* Third Wypijewski Declaration. Plaintiff filed a motion to strike the Third Wypijewski Declaration on grounds that (1) the declarant was not the proper individual to attest to the FCC's actions; (2) that her statements contain hearsay and are, therefore, not admissible; and (3) that the declaration is inherently unreliable. *See* Plaintiff's Motion to Strike at 2–8. For the reasons stated below, the court denies plaintiff's motion to strike.

Generally, declarations accounting for searches of documents that contain hearsay are acceptable. *See SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991). In *SafeCard Services*, the plaintiff asserted that the affidavit contained second-hand statements thus rendering the affidavit inadmissible. The court, in upholding the affidavit, reasoned that the declarant's statements, although second-hand, were based upon an individual's actual knowledge. *Id.* Similar to the affidavit in *SafeCard*, Ms. Wypijewski's third declaration contains second-hand information. Specifically, Mr. Andary, the addressee of the five letters, confirmed to Ms. Wypijewski that the letters had been forwarded to him. *See* Third Wypijewski Declaration ¶ 5. Therefore, the court concludes that Ms. Wypijewski's statements regarding these letters, although partly second-hand, are based on Mr. Andary's actual knowledge, and are thus reliable. The court further notes that plaintiff has previously attacked the credibility of Ms. Wypijewski in a previous FOIA action before this very court. *See Kay v. FCC*, 867 F.Supp. 11, 24 (D.D.C.1994). As in that case, the court concludes that plaintiff has offered no concrete evidence to doubt Ms. Wypijewski's credibility. Accordingly, the court denies plaintiff's motion to strike.

30. Third Wypijewski Declaration ¶¶ 3–8.

31. *Id.*

32. *Id.* at ¶ 9.

33. *Id.*

34. *Id.* at ¶ 10.

35. In an effort to discredit Ms. Wypijewski's statements in her third declaration, plaintiff has subpoenaed two former FCC employees for depositions. The FCC subsequently filed a motion to quash subpoenas and a motion for a protective order asserting that the depositions of these two individuals is not relevant to the present action,

## C. Adequacy of the *Vaughn* Index

■ In justifying non-disclosure, the government must submit a *Vaughn* Index and affidavits for the court to conduct a *de novo* review of the applicability of the exemption invoked. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Traditionally, a *Vaughn* Index is a single document describing the deletion, the exemption invoked, and the exemption's applicability. *Id.; see also Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C.Cir. 1979). In short, a *Vaughn* Index lists the withheld documents along with the agency's reasons for non-disclosure.

■ However, it is well established that the critical elements of the *Vaughn* Index lie in its function, and not its form. *See Keys v. DOJ*, 830 F.2d 337, 349 (D.C.Cir. 1987). As a result, an agency may depart from the traditional *Vaughn* Index depending on the exemption invoked. *See Information Acquisition Corp. v. DOJ*, 444 F.Supp. 458, 462 (D.D.C.1978). Ultimately, the agency's submissions must enable the court to derive a clear explanation of why the agency invoked the particular exemption. *See Keys*, 830 F.2d at 349; *see also Vaughn v. U.S.*, 936 F.2d 862, 867 (6th Cir.1991).

■ Courts have commonly approved of a departure from the traditional *Vaughn* Index where an agency invokes Exemption 7(A). *See NLRB v. Robbins Tire*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978); *see also Bevis v. Dep't. of State*, 801 F.2d 1386, 1389–1390 (D.C.Cir.1986); *see*

*also Crooker v. ATF*, 789 F.2d 64, 67 (D.C.Cir.1986); *see also Campbell v. HHS*, 682 F.2d 256, 265 (D.C.Cir.1982); *see also Kay*, 867 F.Supp. at 18. Specifically, an agency is permitted to withhold records under Exemption 7(A) on a categorical basis and establish a generic showing of interference, rather than an individual showing of interference. *See Robbins Tire*, 437 U.S. at 224, 98 S.Ct. at 2318. Moreover, where an agency invoking Exemption 7(A) proceeds on a categorical basis, a traditional *Vaughn* Index is unnecessary. *See e.g., Church of Scientology of California v. IRS*, 792 F.2d 146, 152 (D.C.Cir.1986); *see also Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir.1987).

■ When an agency invokes Exemption 7(A) and relies on the categorical approach to withhold documents, it must undertake a three-fold task. *See Bevis*, 801 F.2d at 1389–1390. First and most importantly, the agency must define the categories functionally. *See id.* A proper functional category will allow the court to link the nature of the document and the alleged likely interference. *Id.* Second, the agency must conduct a document-by-document review in order to assign each document to a proper category. *Id.* Finally, the agency must explain to the court how the release of material in each category would interfere with enforcement proceedings. *Id.*

■ In the present case, the FCC relied on the categorical approach to demonstrate the applicability of Exemption 7(A). To substantiate its decision to withhold the documents, the FCC submitted two declarations

and that plaintiff has failed to show bad faith on the part of the FCC to warrant discovery. *See* Defendant's Motion to Quash Subpoenas and Motion for a Protective Order at 5–7.

A district court should deny discovery when the affidavits are sufficiently detailed and submitted in good faith. *See SafeCard Serv.*, 926 F.2d at 1200. Further, discovery should be denied if the district court determines that plaintiff merely desires discovery as a means of finding "something that might impugn the affidavits" submitted by the agency. *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836–837 n. 101 (D.C.Cir. 1979). In the present case, plaintiff states that he seeks to depose these two individuals "[i]n an effort to determine whether the hearsay statements contained in the [third] Wypijewski Decla-

ration are accurate." Plaintiff's Opposition to Defendant's Motion to Quash Subpoenas and for a Protective Order at 3. He further acknowledges that agency affidavits are provided with a good faith presumption but argues that he has submitted evidence of bad faith in his motion for *in camera* review to cast doubt on the FCC's submissions. *Id.* at 5–6. However, the court, as stated above, concluded that Ms. Wypijewski's declaration is sufficient. The court has further concluded that plaintiff failed to submit any concrete evidence of bad faith on the part of the FCC. Consequently, the court determines that plaintiff impermissibly seeks discovery as a means to discredit the FCC's declarations. Accordingly, the court grants defendant's motion to quash and motion for a protective order.

as well as two *Vaughn* Indices.[36] Plaintiff, however, challenges the adequacy of the FCC's submissions arguing that the categorical approach is improper because it fails to provide an explanation for each document withheld.[37] Plaintiff argues, therefore, that the FCC's submissions lack specificity to enable the court to review the applicability of the invoked exemptions.[38] Plaintiff's assertion, however, must fail because the *Vaughn* Indices and the declarations submitted by the FCC are sufficiently adequate for the court to conduct a *de novo* review of Exemption 7(A).

First, the FCC defined its categories functionally. Specifically, the FCC withheld four categories of documents: (1) confidential complainant/informant exhibits to be used as part of the Show Cause/HDO proceeding; (2) attorney work product notes; (3) notarized statements of prospective witnesses; and (4) forest service documents to be used as potential exhibits in the Show Cause/HDO proceeding.[39] These categories allow the court to link the nature of the documents and the ensuing interference. For example, the category entitled confidential complainant/informant exhibits defines the nature of the information contained in the included documents. Specifically, this category contains documents submitted by confidential complainants/informants regarding plaintiff's activities.[40] This allows the court to assess the FCC's representations in the *Vaughn* Indices as well as the accompanying declarations of how the release of the documents would interfere with the Show Cause/HDO proceeding.

Second, the FCC conducted a document-by-document review and attests that it withheld 123 documents in the category of confidential complainant/informant exhibits; 57 documents in the category of attorney work product notes; 201 documents in the notarized statements of prospective witnesses category; and 77 documents in the category of forest service documents.[41] Finally the *Vaughn* Indices in conjunction with the declarations provide the court with detailed explanations of how release of each category of documents would interfere with the Show Cause/HDO proceeding against plaintiff. Accordingly, the court concludes that the FCC's *Vaughn* Indices and the two accompanying declarations in the record are adequate to allow the court to conduct its *de novo* review. As such, the court now proceeds to conduct its *de novo* review of the invoked exemption.

### D. *De Novo* Review of the Challenged Exemptions

 It is well established that the mandate of the FOIA calls for broad disclosure of government records, yet it is also recognized that public disclosure is not always in the public interest. Consequently, Congress provided nine exemptions to the general disclosure provisions of the FOIA. *See CIA v. Sims,* 471 U.S. 159, 166, 105 S.Ct. 1881, 1886, 85 L.Ed.2d 173 (1985). In the present case, the FCC invokes one subcategory of law enforcement subsection (b)(7) ("Exemption 7") to withhold records responsive to plaintiff's FOIA requests: subcategory 7(A), interference with a pending enforcement proceeding. In order to properly invoke Exemption 7, the FCC must initially demonstrate that the records were compiled for a law enforcement purpose. For subcategory 7(A) to apply, the FCC must demonstrate that it is needed to protect a pending enforcement proceeding.

The court's *de novo* review of the record indicates that the FCC properly classified the withheld records as being compiled for

---

**36.** The FCC also submitted the Second Declaration of Anne Marie Wypijewski filed under seal. Plaintiff to this date has not responded to that motion. Since the FCC's motion is unopposed, the court hereby grants the motion to file the declaration under seal.

**37.** Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp. to Summ. J.") at 9.

**38.** *Id.*

**39.** Clance Decl. and Def. Exh. B.; Wypijewski Decl. and Def. Exh. L.

**40.** Wypijewski Decl. ¶ 31 and Def. Exh. L.

**41.** Clance Decl. and Def. Exh. B; Wypijewski Decl. and Def. Exh. L.

law enforcement purposes under Exemption 7. The FCC has also properly invoked Exemption 7(A) to withhold documents concerning an enforcement proceeding. The court concludes that the FCC released all reasonably segregable material responsive to plaintiff's FOIA requests. The court will now address the threshold inquiry of Exemption 7 and then the invoked subcategory 7(A).

### 1. Exemption 7—The Law Enforcement Exemption

 The FCC invokes Exemption 7 to withhold documents relating to law enforcement proceedings. Exemption 7 protects "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). In order to withhold documents under Exemption 7, the agency must, as a preliminary matter, demonstrate that the records were compiled for a law enforcement purpose. In order to meet this threshold, an agency must establish the existence of a "nexus between [its] investigation [of the individual] and one of [its] law enforcement duties." *Pratt v. Webster*, 673 F.2d 408, 420–421 (D.C.Cir. 1982); *see also Keys v. DOJ*, 830 F.2d at 340. This nexus necessarily requires an agency to establish a connection between the individual under investigation and a possible violation of a federal law. *See Pratt*, 673 F.2d at 420. Once a law enforcement purpose is established, access to law enforcement records may be limited by any of the six subcategories delineated under Exemption 7.

 In the present case, the FCC has met the threshold requirement by showing that the documents withheld pursuant to Exemption 7 were indeed compiled for law enforcement purposes. The FCC submitted a declaration which attests to the connection between its investigation of plaintiff and its law enforcement duties. This declaration confirms that the FCC's law enforcement duties stem from its established purpose "of regulating interstate and foreign commerce in communication by wire and radio ..."[42]

Ultimately, the FCC bears the responsibility of investigating violations of the Communication Act as well as other FCC rules.[43]

In carrying out its duties, the FCC initiated an investigation into plaintiff's activities in 1993 to determine whether he had violated the FCC's rules regarding the number of frequencies to which plaintiff was entitled, and whether he had made misrepresentations in his FCC applications and correspondence.[44] This investigation alone clearly demonstrates that the FCC has established the necessary nexus between its investigation of plaintiff and one of its law enforcement duties. Accordingly, the court concludes that the information withheld under Exemption 7 does in fact contain information created for law enforcement purposes. The court will now determine whether the FCC has satisfied the requirements of Exemption 7(A).

### 2. Exemption 7(A)—Interference with Investigation or Enforcement Proceedings

 An agency may invoke Exemption 7(A) when release of the requested information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The applicability of Exemption 7(A) involves a two-step analysis: (1) whether a law enforcement proceeding is pending or prospective; and (2) whether release of information about it could reasonably be expected to cause some articulable harm. *See Bevis*, 801 F.2d at 1388.

### a. Pending Enforcement Proceeding

 An agency may invoke Exemption 7(A) to protect regulatory proceedings as well as criminal and civil actions. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 310 (D.C.Cir.1988). Regardless of the type of enforcement proceeding an agency aims to protect, an agency may not simply withhold records found in an investigatory file. *See Robbins Tire*, 437 U.S. at 232, 98 S.Ct. at 2322. However, an agency may

---

**42.** Wypijewski Decl. ¶ 25.

**43.** *Id.*

**44.** Wypijewski Decl. ¶ 28. The FCC confirms that the investigation is specifically geared towards determining whether plaintiff has violated the FCC's rules, including 47 C.F.R. §§ 90.623, 90.625, 90.631, 90.633, 90.155, and 1.17.

invoke Exemption 7(A) to protect pending investigations or actual enforcement proceedings. *Id.* at 220, 98 S.Ct. at 2316; *Campbell v. HHS*, 682 F.2d at 264, n. 20 (citing *Carson v. DOJ*, 631 F.2d 1008, 1018 (D.C.Cir.1980)); *see also Kilroy v. NLRB*, 633 F.Supp. 136, 142–143 (S.D.Ohio 1985), *aff'd*, 823 F.2d 553 (6th Cir.1987). In addition, if the agency invokes Exemption 7(A) to withhold witness statements, the agency may continue to withhold those statements until the completion of all reasonably foreseeable administrative and judicial proceedings. *See Robbins Tire*, 437 U.S. at 220, 98 S.Ct. at 2316. Moreover, if the proceeding is not pending, an agency may continue to invoke Exemption 7(A) so long as the proceeding is regarded as prospective. *See Ehringhaus v. FTC*, 525 F.Supp. 21, 23 (D.D.C.1980) (quoting *Nat'l Public Radio v. Bell*, 431 F.Supp. 509, 514 (D.D.C.1977)).

 In the present case, the FCC invoked Exemption 7(A) to withhold records relating to an ongoing investigation of plaintiff's alleged violation of the FCC's rules and regulations.[45] Plaintiff, however, asserts that the investigation has been completed and that the case is in its trial phase.[46] Plaintiff argues, therefore, that the FCC must release the records he requested.[47] The court disagrees. Plaintiff fails to recognize the extent of the protection of Exemption 7(A). Although the FCC's investigation of plaintiff's activities may be completed, the FCC may continue to withhold those records until all reasonably foreseeable proceedings stemming from that investigation are closed. Specifically, the FCC may continue to invoke Exemption 7(A) to withhold the requested documents until the Show Cause/HDO proceeding regarding the revocation of plaintiff's licenses comes to a conclusion. The record indicates that plaintiff is waiting for a full evidentiary hearing before an ALJ regarding the revocation of his radio licenses. Initially, the ALJ recommended that plaintiff's licenses be revoked but the FCC overruled that decision and remanded the matter back to the ALJ for an evidentiary hearing. To

date, that hearing has not yet concluded. As such, the FCC's enforcement proceeding against plaintiff is considered pending. Accordingly, the court concludes that the FCC properly invoked Exemption 7(A) to withhold the records at issue.

**b. Interference**

 Once an agency establishes that an enforcement proceeding is pending, the agency must further demonstrate that release of the withheld documents is likely to cause some distinct harm. *See Campbell*, 682 F.2d at 258. An agency may invoke Exemption 7(A) when either the government's case in court could be harmed or the investigation for an imminent proceeding may be harmed. *Id.; see also North v. Walsh*, 881 F.2d 1088, 1097 (D.C.Cir.1989). Thus, an agency may not withhold responsive documents merely because they are related to an enforcement proceeding. *See Campbell*, 682 F.2d at 259. Moreover, the agency needs to establish a direct relationship between the agency records and the pending investigation to evidence the possible interference. *Id.* As a result, the agency must demonstrate that disclosure would "disrupt, impede or otherwise harm the enforcement proceeding or the investigation." *North*, 881 F.2d at 1097.

 Generally, an agency may establish interference by showing that release of the records would reveal the scope, direction and nature of its investigation. *See North*, 881 F.2d at 1097 (citing *Alyeska Pipeline Service*, 856 F.2d at 309). Further, interference may be established by demonstrating that release of the records may give the requester earlier and greater access than otherwise possible. *See Robbins Tire*, 437 U.S. at 241, 98 S.Ct. at 2326; *see also North*, 881 F.2d at 1097. In this regard, FOIA cannot be used as a discovery tool. *See Robbins Tire*, 437 U.S. at 242, n. 23, 98 S.Ct. at 2327, n. 23 (citing *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835–836, 35 L.Ed.2d 119 (1973)). Specifically, a requester's rights in the withheld documents are neither diminish-

45. Clance Decl. ¶ 7; Def. Mot. for Summ. J. at 7.

46. Pl. Opp. to Summ. J. at 7.

47. *Id.*

ed nor enhanced by any litigation-generated need for the documents. *Id.* An agency may further establish interference by demonstrating that premature release of the records could give a litigant the ability to construct defenses to avoid the charges entirely. *Id.* at 241–242, 98 S.Ct. at 2326–2327; *see also North*, 881 F.2d at 1097. Finally, where an agency withholds witness statements, the agency may demonstrate interference by showing that premature release of witness statements could lead to possible witness intimidation, thereby chilling potential witnesses. *See Robbins Tire,* 437 U.S. at 239–241, 98 S.Ct. at 2325–2326.

■ In the instant case, the FCC invokes Exemption 7(A) for fear that disclosure of the four categories of documents would significantly harm the Show Cause/HDO proceeding.[48] Plaintiff, however, argues that the FCC has improperly invoked Exemption 7(A) by denying him access to information necessary to defend against the Show Cause/HDO proceeding.[49] Plaintiff further argues that the FCC's concerns regarding witness intimidation are unfounded.[50] Specifically, plaintiff asserts that the "FCC has not even alleged that [plaintiff] has harassed or threatened any of the FCC's witnesses."[51]

Plaintiff's assertions, however, must fail because the FCC amply demonstrated that release of the withheld records would interfere with the pending Show Cause/HDO proceeding. The FCC specifically established that release of any of the above four categories would give rise to the following harms: (1) give plaintiff insight into the FCC's evidence against him; (2) allow plaintiff to discern the narrow focus of the FCC's investigation; (3) potentially assist plaintiff in circumventing the investigation; and (4) potentially create witness intimidation and further discourage future witness cooperation.[52] In particular, the FCC attests that the notarized statements of prospective witnesses, the complainant/informant exhibits and the forest service documents were pre-

pared precisely to be used as part of the Show Cause/HDO proceeding, either as testimony or exhibits.[53] As such, release of these categories could allow plaintiff to assess the FCC's evidence against him, revealing the scope, nature and focus of the FCC's investigation. As a result, plaintiff could potentially circumvent the Show Cause/HDO proceeding.

■ Furthermore, the FCC's fears regarding witness intimidation are not unfounded. The FCC has established that the possibility of witness intimidation exists by attesting that prospective witnesses have expressed their fear to the FCC.[54] The FCC need not establish that witness intimidation is certain to occur, only that it is a possibility. *See Robbins Tire,* 437 U.S. at 239–241, 98 S.Ct. at 2325–2326. Accordingly, the court concludes that the FCC properly invoked Exemption 7(A) to withhold the records at issue.

## III. CONCLUSION

For the reasons stated above, the court denies plaintiff's motion for *in camera* review; denies plaintiff's motion to strike; grants the FCC's motion to quash; grants the FCC's motion for leave to file under seal; and grants the FCC's motion for summary judgment.

**SO ORDERED.**

A separate Order for Entry of Judgment accompanies this Memorandum Opinion and Order.

### *ORDER*

**Denying Plaintiff's Motion for *In Camera* Review, Denying Plaintiff's Motion to Strike, Granting Defendant's Motion to Quash, Granting Defendant's Motion for Leave to File Under Seal, and Granting Defendant's Motion for Summary Judgment**

This matter comes before the court on the following motions: (1) plaintiff's motion for

48. Def. Mot. for Summ. J. at 7.

49. Pl. Opp. to Summ. J. at 5–9.

50. *Id.* at 13–15.

51. *Id.* at 14.

52. Def. Mot. for Summ. J. at 7–8.

53. Wypijewski Decl. ¶ 31 and Def. Exh. L.

54. Wypijewski Decl. ¶ 33.

*in camera* review; (2) plaintiff's motion to strike the third Wypijewski declaration; (3) the FCC's motion to quash subpoenas; (4) the FCC's motion for leave to file second declaration under seal; and (5) the FCC's motion for summary judgment. Upon consideration of the parties' submissions, the applicable law, and the record herein, the court denies plaintiff's motion for *in camera* review; denies plaintiff's motion to strike the third Wypijewski declaration; grants the FCC's motion to quash subpoenas; grants the FCC's motion for leave to file second declaration under seal; and grants the FCC's motion for summary judgment for reasons set forth in a Memorandum Opinion and Order issued on the 21st day of August, 1997.

**ORDERED** that Plaintiff's Motion for *In Camera* Review be and is hereby **DENIED;** it is

**ORDERED** that Plaintiff's Motion to Strike be and is hereby **DENIED;** it is

**ORDERED** that FCC's Motion to Quash be and is hereby **GRANTED;** it is

**ORDERED** that FCC's Motion for Leave to File Under Seal be and is hereby **GRANTED;** it is

**FURTHER ORDERED** that FCC's Motion for Summary Judgment be and is hereby **GRANTED;** and it is

**ORDERED** that judgment be and is hereby entered in favor of defendant FCC; and it is

**FURTHER ORDERED** that the above-captioned case be and is hereby **DISMISSED.**

**SO ORDERED.**